Tristan V. Harvey
Folsom State Prison
P.O. Box 950
Folsom, CA 95671 (USA)

In propria persona





E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TRISTAN V. HARVEY,                )   CV 08    2947
                                  )   CASE No.:
            Petitioner,           )
                                  )   NOTICE OF MOTION AND MOTION
    vs.                           )   FOR STAY/ABEYANCE AND LEAVE
                                  )   TO AMEND PETITION FOR WRIT
M. C. KRAMER, Warden, et al.,     )   OF HABEAS CORPUS; AND POINTS
                                  )   AND AUTHORITIES IN SUPPORT
            Respondent.           )   THEREOF.

PLEASE TAKE NOTICE THAT Petitioner, Tristan V. Harvey, hereby moves for

an order directing that the above-entitled action be held in abeyance to allow petitioner to

exhaust additional claims, and granting petitioner leave to add the newly exhausted claims to the

action by amendment.

This motion is based upon the records and pleadings in the instant action, the attached

declaration, and the attached memorandum of points and authorities.

DATED: 5-18-08

Tristan V. Harvey

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Petitioner, a state prisoner proceeding pro se, moves this Court to hold the petition for writ of habeas corpus presently before the Court in abeyance, and to grant petitioner leave to add newly identified and partially exhausted claims by amendment. This motion is being contemporaneously filed with Harvey's habeas corpus petition. The Court has not yet issued an order regarding the petition.

Prior to preparing the current federal habeas petition, petitioner learned that, although he had properly raised four claims in the California Appellate Court, only one of those claims was actually exhausted in the California Supreme Court. Three claims were not exhausted due, in part, to counsel's opinion that the additional claims would take away from the likelihood of success on the one claim that counsel did in fact choose to present to the California Supreme Court. Consequently, three partially exhausted claims were not raised in the Supreme Court. Nor were those claims raised in the current petition.

In sum, the petition presently before the Court asserts only the one constitutional claim that was exhausted in the highest state court——that the trial court's unreasonable exclusion of Witness Reyes denied petitioner of his Fourteenth Amendment right to Due process of law and the right to present a defense, in violation of U.S. Supreme Court precedent. The petition does not, however, raise several other meritorious claims that should have been presented in the state's highest court.

Accordingly, petitioner moves this Court to hold the present petition in abeyance until such time petitioner properly exhausts all of his constitutional claims in the highest state court.

Petitioner further moves the Court to grant him leave to amend the current petition to include all of the constitutional claims identified herein following proper exhaustion.

## STANDARD FOR STAY AND ABEYANCE

The Ninth Circuit has held that when confronted with a mixed petition, the district court must consider the alternative of staying the petition after dismissal of unexhausted claims, in order to permit petitioner to exhaust those claims and then add them by amendment to his stayed petition. Kelly v. Small, 315 F.3d 1063 (9th Cir. 2003). Also under Ninth Circuit precedent, a federal district court retains discretion to hold federal proceedings in abeyance when there is a federal petition on file containing only exhausted claims and a petitioner has identified new claims that need to be exhausted in state court. Calderon v. United States District Court (Taylor), 134 F.3d 981, 986 (9th Cir. 1998); Anthony v. Cambra, 236 F.3d 568 (9th Cir. 2000).

## STANDARD FOR AMENDMENT

A § 2254 habeas corpus petition or § 2255 motion may be amended or supplemented in the same manner as any other civil pleading under Federal Rule 15. (28 U.S.C. § 2242.) Federal Rule of Civil Procedure 15(a) allows amendment once as of right without leave of court at any time before the government files a responsive pleading, and any time thereafter with leave of court or written consent of the government. Calderon v. United States District Court, supra, (Taylor), 134 F.3d 981, 986 (9th Cir. 1998); Anthony v. Cambra, supra, 236 F.3d 568 (9th Cir. 2000).

\\\

\\\

\\

# ARGUMENT

## I

## PETITIONER HARVEY IS ENTITLED TO ABEYANCE AND LEAVE TO AMEND IN THE CURRENT HABEAS CORPUS PROCEEDING

The circumstances giving rise to petitioner's request that this Court stay the current habeas proceeding is distinguishable from those surrounding similar requests.  In most cases, a request for stay and abeyance is made when the petitioner has presented the court with a mixed petition.  A petition that contains both exhausted and unexhausted claims.  In the present case, after learning that several of the claims that he presented to the California Appellate Court on direct appeal were not properly exhausted, Petitioner Harvey presented only the properly exhausted claim in the present petition.  (See Exhibit A, Petitioner Harvey's Declaration.) Petitioner's request is based on the need to have his properly exhausted claim held in abeyance until he has properly exhausted (factually and legally) several of his constitutional claims in the state's highest court, then add those claims to the present petition by amendment.  Should the present petition be dismissed without prejudice or voluntarily withdrawn, it is not likely that petitioner could return to federal court within the Antiterrorism and Effective Death Penalty Act's (AEDPA) pernicious time limitations.

In cases involving a mixed petition the Ninth Circuit has held that the district court must consider the alternative of staying the petition after dismissal of unexhausted claims, in order to permit a petitioner to exhaust those claims and then add them by amendment to the stayed petition.  Kelly v. Small, 315 F.3d 1063, 1070 (9th Cir. 2003).  Similarly, a federal district court has discretion to hold federal proceedings in abeyance when there is a federal petition on file containing only exhausted claims and a petitioner has identified new claims that need to be

exhausted in state court. <u>Calderon v. United States District Court</u> (Taylor), 134 F.3d 981 (9th Cir. 1998).

The district court's exercise of discretion to hold the federal petition in abeyance is particularly appropriate when the AEDPA's one-year deadline looms and the petitioner is still attempting to exhaust remedies. In order to avoid exceeding the limitations period for the newly added claims, the district court may, in its discretion, grant a stay and hold the petition in abeyance during the pendency of the state court proceedings for these claims. <u>Valerio v. Crawford</u>, 306 F.3d 742 (9th Cir. 2002); <u>Cassett v. Stewart</u>, 406 F.3d 614 (9th Cir. 2005).

In <u>Rhimes v. Weber</u>, 124 S.Ct. 1528 (2005), the United States Supreme Court upheld the district court's discretion to stay the proceedings as an alternative to dismissal. Indeed, the Supreme Court in <u>Rhimes</u> held that a district court should stay, rather than dismiss, a mixed petition containing exhausted and unexhausted claims if the petitioner has good cause for his failure to exhaust, his claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. (<u>Ibid</u>.)

In the course of preparing the present petition, petitioner learned that several procedural errors were committed in the presentation of his claims to the state courts. First of all, petitioner's attorney failed to raise a potentially meritorious instructional error claim. Secondly, petitioner learned that his appointed attorney failed to factually and legally exhaust several of his direct appeal claims in the state's highest court——that is, while presenting his claims to the state appellate court, petitioner's attorney then failed to exhaust those claims in the California Supreme Court. Third and finally, petitioner has recently learned, through newly discovered evidence, that the jury did not find a material element true. (<u>See</u> Declaration of petitioner

attached hereto as Exhibit A; see also a copy of the state habeas corpus petition that petitioner has contemporaneously filed in the state courts, attached hereto as Exhibit B.)

A stay of the exhausted claim in the present petition is needed so that petitioner may factually and legally exhaust, and then add by amendment, the following claims: (1) The trial court committed prejudicial constitutional error by instructing the jury with a legally incorrect alternative aiding and abetting theory that omitted the personal infliction element of Penal Code Section 12022.7, in violation of controlling United States Supreme Court precedent; (2) Petitioner's conviction for first degree robbery in a dwelling house, Penal Code section 211/213, subdivision (a)(1)(A), is not supported by substantial evidence, as it omits the material element of habitation, in violation of controlling United States Supreme Court precedent; (3) Appellate Counsel was ineffective for failing to properly exhaust a constitutional challenge to CALJIC No. 17.20 regarding personal infliction of great bodily injury as a result of a group beating; thus, denying petitioner of his right to later raise those claims in federal court; and (4) Appellate Counsel rendered ineffective assistance of counsel by failing to properly raise the above-mentioned claims. (See Exhibit B.)

### Conclusion

Petitioner, untrained in the intricacies of habeas corpus litigation, failed to properly exhaust the above-referenced claims in the state courts. Petitioner's failure was not an intentional dilatory litigation tactic. Petitioner's unexhausted claims involve significant constitutional violations and are potentially meritorious. After learning of his potentially fatal errors, petitioner sought to avoid any piecemeal litigation or inconvenience to the court by presenting only his properly exhausted claim in the present petition. Accordingly, this court should grant

1  petitioner's request for stay/abeyance and leave to amend at this early stage of the current habeas

2  proceeding.

3  DATED: 5-18-08

4

5                                                     Tristan V. Harvey
6                                                     Folsom State Prison
                                                      P.O. Box 950
7                                                     Folsom, CA 95671 (USA)

8                                                     In propria persona

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT - A

Tristan V. Harvey
Folsom State Prison
P.O. Box 950
Folsom, CA 95671 (USA)

In propria persona

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TRISTAN V. HARVEY, | CASE No.: _____ |
| Petitioner, | **DECLARATION OF TRISTAN HARVEY IN SUPPORT OF MOTION FOR STAY/ABEYANCE AND LEAVE TO AMEND PETITION FOR WRIT OF HABEAS CORPUS; AND POINTS AND AUTHORITIES IN SUPPORT THEREOF.** |
| vs. | |
| M. C. KRAMER, Warden, et al., | |
| Respondent. | |

**I, Tristan V. Harvey, hereby declare as follows:**

1.    I am the petitioner, proceeding pro se, in the above-entitled action.

2.    I have been continuously incarcerated since my conviction and sentence in state prison, and am presently incarcerated at Folsom State Prison in Represa, California.

3.    I have no education or training in the area of law. I do not understand or comprehend the complex area of legal research, case law interpretation, legal writing, or habeas corpus litigation.

4.    In my pursuit of post-conviction relief in the state courts and this Court, I have relied upon the assistance of others that appeared knowledgeable in law. Said assistance includes the instant pleading and those currently on file with this Court.

5.    In 2005, while incarcerated at Folsom State Prison, I retained the appointment of private appellate counsel to file a direct appeal on my behalf. The appeal consisted of several constitutional claims for relief. The direct appeal was denied a year later.

6.    In July of 2007, my appellate attorney filed a petition for review in the California Supreme Court. Counsel only raised one of the claims in the California Supreme Court. That petition was summarily denied without comment.

7.    In April of 2008, out of money and in despair, I obtained the assistance of a fellow prisoner at Folsom State Prison in preparing the habeas petition now before the Court. In the course of preparing the aforementioned petition I was informed by the prisoner assisting me that that I had committed several procedural errors in presenting my direct appeal to the state courts. Specifically, I was informed that my appellate attorney did not exhaust all of my constitutional claims to the highest state court. Also, I was informed that there was an instructional error that was never brought up at all, and another claim involving the state's failure to prove an element of first degree robbery.

8.    After being informed as described above, I was advised not to include the unexhausted claims to the petition pending before the court because it could result in dismissal without prejudice and statute of limitation complications.

-2-

9.  The inmate that is currently helping me agreed to file for a stay and abeyance and further agreed to properly present my unexhausted claims to the state court in a petition for a writ of habeas corpus.

10. I am informed and believe, and thereon state, that a stay of the present habeas proceedings is necessary to afford me a fair opportunity to factually and legally exhaust my unexhausted claims in state court, and then present them to this Court in an amended petition.

11. The instant motion to hold the claims presently before the Court in abeyance and leave to amend is not made for the purpose of dilatory litigation, or any other improper purpose.

12. I have read the foregoing declaration and the facts stated therein are true of my own knowledge, except as to those matters I believe to be true, and if called upon to testify in a court of law I could do so competently.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 24th day of April 2008 at Folsom, California.

Tristan V. Harvey
Folsom State Prison
P.O. Box 950
Folsom, CA 95671 (USA)

In propria persona

- 3 -

# EXHIBIT - B

Tristan V. Harvey
Folsom State Prison
P.O. Box 950
Folsom, CA 95671 (USA)

In propria persona

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF MARIN

| | |
|---|---|
| In the Matter of the application of:<br>TRISTAN V. HARVEY,<br><br>       Petitioner,<br><br><br>for a writ of *habeas corpus*. | CASE No.: _____<br><br>**PETITION FOR A WRIT OF<br>HABEAS CORPUS** |

Tristan V. Harvey
Folsom State Prison
P.O. Box 950
Folsom, CA 95671 (USA)

In propria persona

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF MARIN

In the Matter of the application of:          )
TRISTAN V. HARVEY,                            )        CASE No.: _____
                                              )
              Petitioner,                     )        **PETITION FOR WRIT OF**
                                              )        ***HABEAS CORPUS*; AND POINTS**
                                              )        **& AUTHORITIES IN SUPPORT**
                                              )        **THEREOF.**
                                              )
for a writ of *habeas corpus*.                )

**PETITION FOR A WRIT OF *HABEAS CORPUS***

**TO:   THE HONORABLE PRESIDING JUDGE OF THE MARIN COUNTY
       SUPERIOR COURT.**

        Tristan V. Harvey petitions this Honorable Court for a writ of *habeas corpus* by a person

in state custody.  This Court has original jurisdiction pursuant to the California Constitution and

California Penal Code section 1473, et seq.   The reasons for why this petition should be granted

are set forth within.

## I.

Petitioner Harvey is confined in violation of the Constitution by the Director of the California Department of Corrections & Rehabilitation, Matt Cate, inter alios (collectively "respondent"). This Petition arises from the judgment of conviction rendered March 23, 2005, in San Rafael, California, in People v. Tristan Harvey, Marin County Superior Court Case No.: SC132841B.

## II.

Petitioner was convicted in a jury trial of Penal Code § 211/213, subdivision (a)(1)(A), robbery in concert (count 1)[1], § 245, subdivision (a)(1), assault by means likely to cause great bodily injury (count 2) and § 236 false imprisonment (count 3). As to counts 1, 2 and 3, pursuant to § 12022.7, subdivision (a), it was alleged that petitioner personally inflicted great bodily injury upon Damian DiPrima.

## III.

On March 23, 2005, probation was denied and petitioner was sentenced to the mid-term of 6 years on count 1. The sentences on counts 2 and 3 were stayed. A consecutive term of 3 years was imposed for the great bodily injury enhancement. Thus, petitioner's total sentence was 9 years. The First District Court of Appeal affirmed the judgment in a non-published opinion. (People v. Harvey 2007 WL 1242098 (Cal. App. 1 Dist.) (April 30, 2007).) On July 18th, 2007 the California Supreme Court declined to grant discretionary review.

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

## IV.

## FACTUAL AND PROCEDURAL HISTORY

Petitioner respectfully requests the Court to look to the Court of Appeal's opinion filed on April 30, 2007, for a procedural and factual synopsis to the case at bar. (People v. Harvey, supra, WL 1242098.)

## V.

The current issues are being presented to this Honorable Court pursuant to this Court's original jurisdiction. (Penal Code section 1473.)   Petitioner has filed no previous petitions in this Court.   Petitioner asserts that this petition is timely and that he is entitled to equitable and statutory tolling for the duration of all state proceedings that were pending prior to the filing of the instant petition.  See e.g., Carey v. Saffold (2002) 536 U.S. 214 [122 S.Ct. 2134; 153 L.Ed. 2d 260]; In re Burdan (Cal.App.3d 2008) 73 Cal.Rptr.3d 581, 590-591[holding that ten month delay by unrepresented prisoner does not bar plenary review of the petitioner's claim].

## VI.

Petitioner has no other plain, speedy or adequate remedy at law in that the present issues are only fully reviewable by a consideration of the facts presented in this petition for writ of habeas corpus.

## VII.

In support of this petition, petitioner relies upon the petition, the supporting memorandum of law, and the Exhibit portion attached hereto, which are all incorporated herein by reference.   Petitioner is also contemporaneously filing a "Motion for Judicial Notice," requesting that the Court take judicial notice of the Reporter's Transcript and the Clerk's

Transcript (respectively "RT" & "CT") on appeal in the cases of <u>People v. Harvey</u>, <u>supra</u>, and <u>People v. Voelker</u>, A108798.

VIII.

Petitioner is currently unlawfully incarcerated in violation of the United States Constitution and confined at Folsom State Prison in Represa, California, pursuant to a judgment pronounced by the Marin County Superior Court.

IX.

<u>**CONTENTIONS**</u>

This Petition is based upon the following grounds:

**GROUND ONE:**    The trial court committed prejudicial constitutional error by instructing the jury with a legally incorrect alternative aiding and abetting theory that omitted the personal infliction element of Penal Code Section 12022.7, in violation of controlling United States Supreme Court precedent.

**GROUND TWO:**    Petitioner's conviction for first degree robbery in a dwelling house, Penal Code section 211/213, subdivision (a)(1)(A), is not supported by substantial evidence, as it omits the material element of habitation, in violation of controlling United States Supreme Court precedent.

**GROUND THREE:** Appellate Counsel was ineffective for failing to properly exhaust a constitutional challenge to CALJIC No. 17.20 regarding personal infliction of great bodily injury as a result of a group beating; thus, denying petitioner of his right to later raise those claims in federal court.

**GROUND FOUR:**    Appellate Counsel rendered ineffective assistance of counsel by failing to properly raise the above-mentioned claims.

Due to the above, petitioner's imprisonment is in violation of his Federal Constitutional rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

**WHEREFORE**, petitioner prays that the Court grant the following relief:

1. Order respondent to **show cause** why this Court should not vacate the judgment and sentence in Marin County Superior Court No.: SC132841B;

2. Take judicial notice (Evid. Code §§ 452, subd. (d) and 459, subd. (a)) of the trial record in the record on appeal in People v.Harvey, A109795, and People v. Voelker, A108798;

3. Order an evidentiary hearing so that the Court may corroborate petitioner's claims and resolve *any* possible conflicts in evidence;

4. Appoint counsel to represent petitioner in this matter, and if appropriate, afford counsel the opportunity to invoke the Court's processes to supplement/amend the current petition in a way that protects petitioner's constitutional rights (CRC 4.551(c)(2));

5. Issue a writ of *habeas corpus*, vacating petitioner's unconstitutional conviction;

6. Order any and all relief that this Court deems just and proper.

Your petitioner,

Dated: 5-18-08

Tristan Harvey
California State Prison, Folsom
P.O. Box 950
Folsom, CA 95763

In propria persona

## MEMORANDUM OF POINTS AND AUTHORITIES

**GROUND ONE:**    **THE   TRIAL   COURT   COMMITTED   PREJUDICIAL CONSTITUTIONAL ERROR BY INSTRUCTING THE JURY WITH A LEGALLY INCORRECT ALTERNATIVE AIDING AND ABETTING THEORY THAT OMITTED AN ELEMENT OF THE ENHANCEMENT.**

### (A)    Introduction.

California Penal Code section 12022.7, subdivision (a) provides that "[a]ny person who *personally* inflicts great bodily injury..." (emphasis added) shall be punished.   In the instant case the trial court instructed the jury that they could find petitioner guilty of the 12022.7 enhancements based on the alternative theory of aiding and abetting.  However, such a theory is untenable; an aider and abettor cannot be held liable for the infliction of great bodily injury pursuant to 12022.7.   As petitioner will explain, this legally incorrect alternative theory violated his rights to due process, a fair trial, a jury determination on all elements of the crime, and fundamental fairness under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

### (B)    An Aider And Abettor Cannot Be Held Liable For The Enhancement of Personal Infliction of Great Bodily Injury.

As noted, Penal Code section 12022.7, subdivision (a) states that "[a]ny person who personally inflicts great bodily injury..." is subject to punishment.   In the case of People v. Cole (1982) 31 Cal.3d 568, 571-572, the California Supreme Court held that this enhancement applies only to those persons who themselves actually and personally inflict the injury, *not to those who may have aided and abetted:*

> "... We have concluded that the Legislature intended to impose an additional penalty for causing great bodily injury only on those principles who perform the act that directly inflicts the injury, and that *one who merely aids, abets, or directs another to inflict the physical injury is not subject to the enhanced penalty of section 12022.7.*

***

> In our opinion, the meaning of the statutory language is clear: the enhancement applies only to a person who himself inflicts the injury. ... It is doubtful that the Legislature could have enacted the statute in question more tersely to express the intended limitation on the class of individuals who may be exposed to an enhanced sentence for inflicting great bodily injury. Among the several dictionary definitions of 'personally,' we find the relevant meaning clearly reflecting what the legislature intended: 'done in person without the intervention of another; direct from one person to another.' (Webster's New Internat. Dict. (3d ed. 1961).) No other expression could have more clearly and concisely expressed what we interpret to be the plain meaning of the Legislature: that the individual accused of inflicting great bodily injury must be the person who directly acted to cause the injury. *The choice of the word 'personally' necessarily excludes those who may have aided or abetted the actor directly inflicting the injury.*" (Emphasis added.)

(Accord, People v. Solis (2001) 90 Cal.App.4th 1018 [a conviction can "not be considered a strike if it was based on a theory of aiding and abetting"]; see also People v. Tillet 89 Cal.App.4th 1018 ["[t]he submission of instructions on the law of aiding and abetting liability was error given [the decision in Cole, supra, (1982) 31 Cal.3d 568]"]; accord People v. Magana 17 Cal.App. 4th 1371 [reversible error to instruct with aiding and abetting instructions].)

**(C)    The Alternative Aiding And Abetting Theory Requires Reversal Of The Great Bodily Injury Enhancement Because It Is Impossible To Determine Whether The Jury Relied Upon The Legally Incorrect Theory.**

In petitioner's trial it was established that the two other males (not petitioner) were the ones who inflicted great bodily injury——they choked DiPrima, hit him repeatedly with the belt, stomped on his head, and hit him with a Duraflame log. It was alleged that petitioner initially punched Diprima. Although the supposed punch was alleged to have been the initial blow that hit DiPrima, there is no evidence that he suffered any injury as a result of that initial blow, nor did the prosecutor argue that said blow caused great bodily injury. Ultimately the

victim testified that the two other males were the ones that personally inflicted the great bodily injury, not petitioner.

In this case, petitioner's jury had the exclusive duty of determining whether petitioner was to be held liable for the state's allegation of *personal* infliction of great bodily injury. That duty, however, was obviated when the trial court instructed the jury that petitioner could be found liable based on the legally incorrect alternative theory of aiding and abetting. (See CT-171 and CT-172; CALJIC No. 3.00, CALJIC 3.01.)

Here, the aiding and abetting instructions were prejudicial to petitioner. If the jury followed their instructions (which we presume they did) then they would have mistakenly understood that all principles (including aiders and abettors) were to be found "equally guilty." (CALJIC No. 3.00; CT 171.) The jury was further instructed that, "those who aid and abet the commission of the crime are principles." (Ibid.) These instructions therefore mandated the jury to find aiders and abettors equally as guilty as the actors who directly committed the crime. Hence, the reference to "equal[] guilt[]" (CALJIC No. 3.00) logically describes the concept that aiders and abettors would be held no less liable then the actors who personally inflicted the injury. (See People v. Coddington (2000) 23 Cal.4th 529, 594 [assuming jurors adopt common sense meaning of instructions].) The enhancement must be reversed on this basis alone.

In any event, the prosecutor's aiding and abetting arguments combined with the erroneous aiding and abetting instructions render it impossible to determine which theory of culpability the jury followed in reaching its verdict. In particular, the record does not reveal whether the jury found petitioner guilty as a direct participant, or found petitioner guilty as an

aider and abettor. If the latter theory was the basis for the jury to reach its verdict, the prosecution did not have to establish the requisite element of personal infliction.

The erroneous aiding and abetting instructions amount to structural error because it permitted the jury to convict on two alternative theories, one of which was legally incorrect. (People v. Guiton (1993) 2 Cal.4th 1116.) Because the jury deliberations "are secret and unreported, we have no way of determining" which theory of conviction was the basis of the jury's verdict. (Ho v. Carey (9th Cir. 2003) 332 F.3d 587, 596; see also Arizona v. Fulminante (1991) 499 U.S. 279, 307-308 [implying that harmless error analyses is impermissible where the trial error cannot be "quantitatively assessed in the context of other evidence"].)

As petitioner has shown, the erroneous instructions made it impossible to tell whether the jury convicted petitioner of the great bodily injury enhancement under a direct-participant theory, which was legally permissible, or on an aiding and abetting theory, which was legally incorrect. This circumstance deprived petitioner of his rights under the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution. See Carella v. California (1989) 491 U.S. 263, 265. This deprivation is not subject to harmless error analysis because it negatively permeated the fundamental structure of petitioner's trial. See, e.g., Suniga v. Bunnel (1993) 998 F.2d 664, 667 ["Neither can we, as the state suggests, base a harmless-error determination on the seemingly overwhelming weight of the evidence of ... murder. Where two theories of culpability are submitted to the jury, one correct and the other incorrect, it is impossible to know what the jury (or some juror) did. Here ... the writ should issue. Id. at 670; citation omitted]. Accord Boyde v. California (1990) 494 U.S. 370, 379-380.    Here, too, the writ should issue.

**(D)    The Error Was Prejudicial Under _Chapman_.**

If this Court determines that the error was not structural, then the error must be analyzed under the Chapman standard.  (Chapman v. California (1967) 386 U.S. 18.)

A trial court has a duty to instruct on general principles of law relevant to the issues raised by the evidence.  (People v. Sedeno (1974) 10 Cal.3d 703, 715, disapproved on other grounds in People v. Flannel (1979) 25 Cal.3d 668, 684, fn. 10.)  The court also has a correlative duty to refrain from instructing on principles that have the effect of confusing the jury or relieving it from making findings on relevant issues.  (People v. Saddler (1979) 24 Cal.3d 671, 681; People v. Satchell (1971) 6 Cal.3d 28, 33, fn., 10.)

As noted, the trial court in this case gave inaccurate aiding and abetting instructions which confused the jury and relieved the prosecution's burden of proving every element of the great bodily injury enhancement.  As petitioner explains below, the district attorney's closing argument exacerbated the court's instructional error.

The District attorney told the jury:  "Now since there's three people involved, and _there is no way to know who did what_, the law has also taken this into consideration in several ways.  [¶]  This [aiding and abetting instruction] tells you what a principal in a crime is.  'Persons who are involved in commiting a crime are referred to as principles in that crime.  Each principal, regardless of the extent or manner of participation, is equally guilty.  Principles include those who directly and actively commit the act constituting the crime, _and those who aid and abet the commission of the crime_.'"   Later, the district attorney said, "[s]hould you decide that one of these people were completely, peripherally involved, they're still guilty as a principal, because each principal, _regardless of the extent or manner of participation_, is equally guilty, because they're all working together." (RT 821; emphasis added.)

The net effect of the legally incorrect aiding and abetting instructions and the district attorney's emphasis on the trial court's erroneous instruction of the law was prejudicial. The cumulative effect of these misdeeds was to eviscerate the personal infliction element from the jury's exclusive purview.

The trial court's erroneous aiding and abetting instructions along with the district attorney's aiding and abetting arguments in this case obviated the need for the jury to resolve any question it might have had regarding whether or not Harvey had *personally* inflicted great bodily injury. Stated differently, it is unclear how the jurors used the aiding and abetting theory in their deliberations. They could have interpreted the statements as a legal conclusion——if the jury felt that Harvey was an aider and abettor then he **was** to be found equally as guilty as the actors who did, in fact, personally inflict the great bodily injury——which completely usurped the jury's role of fact finder regarding the element of *personal infliction.*

Moreover, even if the jury did not interpret it as a statement of fact, the erroneous aiding and abetting theory did not require the jury to find *beyond a reasonable doubt* that Harvey's own acts resulted in the personal infliction of the victim's injuries. This is exactly why courts across the state have held aiding and abetting to be a legally incorrect theory when it comes to the determination of *personal* infliction. (People v. Solis, supra, 90 Cal.App.4[th] 1018; People v. Tillet, supra, 89 Cal.App.4[th] 1018; People v. Magana, supra, 17 Cal.App. 4th 1371.)

While instructions need not be perfect, they must ensure that the government proved every element to a unanimous jury beyond a reasonable doubt, and they must be held invalid if there is "a reasonable likelihood that the jury … applied the … instruction in a way that violates the constitution." (Estelle v. McGuire (1991) 502 U.S. 62, 67 (internal quotes omitted.)

(E)    **Conclusion.**

Because it is impossible to determine whether the jury convicted petitioner of the great bodily injury enhancement under a direct-participant theory, which was legally permissible, or on an aiding and abetting theory, which was legally incorrect, per se reversal of the enhancement is required.[2]

**GROUND TWO:**    **PETITIONER'S CONVICTION FOR FIRST DEGREE ROBBERY IN A DWELLING HOUSE, PENAL CODE SECTION 211/213, SUBDIVISION (A)(1)(A), IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AS THE CONVICTION OMITS THE MATERIAL ELEMENT OF HABITATION, IN VIOLATION OF CONTROLLING UNITED STATES SUPREME COURT PRECEDENT.**

(A)    **Introduction.**

A criminal conviction for first degree robbery in concert, within the meaning of Penal Code section 211/213 (a)(1)(A), necessarily requires that the prosecution prove, *inter alia*, that the robbery occurred within an "inhabited dwelling" house. (Ibid.)  In the instant case, the prosecution failed to establish that the premises in which the robbery occurred was an inhabited dwelling.  Indeed, it would have been impossible to prove this element, as the person with the possessory right to the premises did not live in the apartment or consider it to be his dwelling. Instead, he was leasing the premises and *admittedly* using them to store property and grow medicinal marijuana with a California permit.  Consequently, the premises could not be

--------------------------------------------------

[2]  Petitioner asserts that this issue is cognizable on *habeas corpus* pursuant to the California Supreme Court's decision in In re Foss (1974) 10 Cal.3d 910.  That is, when a *habeas* petitioner asserts the deprivation of his fundamental right to require proof by the prosecution of every element of the offense with which he is charged, he may present his claim on *habeas corpus* even if he failed to raise the issue on direct appeal.  However, should this Court nevertheless opine that this issue is barred, then petitioner would assert that he was denied the effective assistance of counsel on his direct appeal, and he would ask that the Court reach the merits of this claim based on the claim of attorney ineffectiveness.  (See *post* IV.)

considered an inhabited dwelling within the meaning of Penal Code section 211/213 (a)(1)(A). This unproven and unsupported finding violated Petitioner Harvey's rights to due process, a fair trial, a jury determination on all elements of the crime, and fundamental fairness under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.    Modification of the sentence is required.

(B)    **Standard Of Review.**

In resolving whether there is sufficient evidence to support each element of a conviction, the court's task is to determine whether a reasonable trier of fact could have found that the prosecution sustained its burden of proving every element of the crime beyond a reasonable doubt.  (In re Winship (1970) 97 U.S. 358; accord In re Foss (1974) 10 Cal.3d 910.)    Each element must be supported by substantial evidence, which has been defined as evidence that "reasonably inspires confidence and is of 'solid value.'"  (People v. Basset (1968) 69 Cal.2d 122, 139; accord United States v. Vuitch (1971) 402 U.S. 62, 72 n. 7 ["... a court should always set aside a jury verdict ... when there is not enough evidence from which a jury could find a defendant guilty beyond a reasonable doubt."]

In resolving whether a building is an "inhabited dwelling," the reviewing court must determine whether the person with the possessory right to the premises uses them as his or her domiciliary dwelling, or rather as a place of business.  (See People v. Villalobos (2006) 145 Cal.App.4th 310, 321 [holding that although a hotel room may be an "inhabited dwelling" within the meaning of first degree robbery statutes if intended for habitation, such a room is merely "occupied" if rented for purposes other than use as a dwelling, such as a place to conduct business].  Penal Code Section 460 provides: "Every burglary of an inhabited dwelling house ... or the inhabited portion of any other building, is burglary of the first degree."    Section 459

provides that "'inhabited' means currently being used for dwelling purposes, whether occupied or not." The terms "inhabited dwelling house" or "inhabited portion of any other dwelling" have the same meaning in *both* the robbery and burglary statutes. (People v. Fleetwood (1985) 171 Cal.App.3d 982, 987-988.)

The case of People v. Cardona (1983) 142 Cal.App.3d 481 enunciated the definitive test that should be applied in determining whether or not a home is in fact an "inhabited dwelling" house. In Cardona, the Fullers decided to move out of the house that they had been renting on Jefferson Street in the town of Carlsbad. The Fullers spent the night in their new home and testified that although they had not concluded moving all of their possessions out of their old house, they never intended to "sleep another night" at their old Jefferson Street home. The family had paid rent through the middle of September on the Jefferson Street house and had not yet completed moving their belongings out of their old home. On September 13, 1981, the defendant, Cardona, broke into and burglarized the Jefferson Street house. Cardona was caught red-handed by the Fullers and was subsequently charged with and convicted of first degree burglary. The Court of Appeal, however, modified the judgement from first-degree to second-degree burglary because, although the Fullers indeed held possessory control of the Jefferson Street residence and still had their possessions in the residence, the court determined that they no longer intended to use the home for dwelling purposes. (Ibid.) Accord People v. Valdez (1962) 203 Cal.App.2d [house is no longer inhabited when no longer used for sleeping quarters].

California law has long recognized that there is a legal distinction between an "inhabited" structure and an "occupied" building. In People v. Gunthrie (1983) 144 Cal.App.3d 832, as in the cases it in turn relied upon, the issue was when a dwelling which was once inhabited

becomes uninhabited for purposes of the burglary and robbery statutes.  As the court explained, the burglary and robbery statutes distinguish between "occupied" and "inhabited."

Because "inhabitation" is an element of the crime of robbery under Penal Code section 211/213(a)(1)(A), the burden was on the People to prove beyond a reasonable doubt the apartment was not only "occupied" at the time of the crime, but also that it was an "inhabited" dwelling, as well.  The People failed to sustain this burden.

> **(C)    216 Marin Street, #306, Was No Longer An Inhabited Dwelling As The Person With The Possessory Right To The Premises Was Using The Apartment To Grow Medicinal Marijuana And Admittedly Residing Somewhere Else.**

As noted in the previous section, there is a legal distinction between an "occupied" building and an "inhabited" dwelling.  In order for the prosecution to meet its burden, the prosecution had to show someone had the present intent to use the premises as a dwelling at the time of the robbery.  (See discussion, above.)  The evidence in this case shows that Jason Voelker, the tenant with the possessory right to the premises, was no longer living in the apartment, but rather cultivating marijuana there.   It was undisputed that the victim did not live in the apartment; he was simply going there to obtain marijuana.  There was evidence that a few pieces of furniture were in Voelker's apartment, but there were no beds or blankets in the structure.  Voelker's apartment was being used to grow marijuana with a medicinal permit.

In trial, it was verified that the San Rafael Police were dispatched to 316 Marin Street, apartment 306 in response to a 911 call (Peoples Ex. 45).  After knocking and receiving no response, the police obtained the keys to the apartment and entered.  The officers noted that the apartment was barely furnished and it appeared as though someone was moving out.  Marijuana plants and a marijuana hydroponics system were found in two separate rooms.  A California medicinal marijuana permit was posted on the wall.  In a separate proceeding, a proceeding that

petitioner has requested this Court to take judicial notice of (People v. Voelker, A108798), the officers that conducted the welfare check on the night of the incident testified that it appeared that Voelker had moved out of the apartment and it was being used to grow marijuana.

See e.g., the following dialogue in the Voelker case:

"MR. WALL [Voelker's attorney]: Q. When you went in the first bedroom that's left off the hallway, what did you see in there?

"WANDA SPALETTA [sergeant]: A. It was pretty much vacant. It looked like they had been moving so there was some -- I believe one box full of some miscellaneous clothing, and that's about it. (RT 976)

"Q. When you went in there on -- early on the morning of November 8th, or late on November 7th, did you see any articles of clothing laying around in Mr. Voelker's apartment, particularly in the living room?

"A. I don't recall anything specific. The apartment was an apartment that was partially vacant because they were moving -- he was in the process of moving out. (RT 860)

***

MR. WALL [Voelker's attorney]: Q. You said it was messier the day before than the date that the picture was taken. Do you remember that?

"RAY LEON [officer]: A. Yes.
Q. And did you ever learn that the people who were residing in that apartment were moving?

A. I do believe I later found that out. (RT 1046.)

See also the testimony of Officer Justin Graham:

MR. WALL [Voelker's attorney]: Q. And lets talk about the first bedroom. As you walked down the hallway, which -- which was the first bedroom that you went into?

"JUSTIN GRAHAM [officer] A.    There was a bedroom -- the first bedroom was located on the left side of the Hallway.

Q.   When you turned on the light, what did you see inside the bedroom?

A.   Nothing.   There was limited furniture, pretty much an open space.   (RT 945)

***

Q.  Let's go to the second bedroom.

A.  Okay.

Q.  Did you turn on the lights yourself in the second bedroom?

A.  I believe I had my flashlight out, I didn't turn on the light.

Q.  So what did you see in the bedroom?

A.  Once again, it was very limited, there was no -- I don't recall any furniture in the bedroom, it was pretty much another open space.  (RT 947)

Viewing this evidence in light most favorable to the prosecution, it does not support a finding that the tenant, Jason Voelker, intended to continue using the apartment as his dwelling place, but rather he was using it as his hydroponics farm.   In trial, the prosecutor attempted to predicate the inhabitation element by arguing that, "[t]he robbery was committed within an inhabited dwelling house, and we know that that's the case here because it was Jason Voelker's apartment."   (RT 816-817.)   However, this argument was clearly erroneous; the fact that Voelker retained possession over the premises and a robbery occurred in the premises is not determinative.   (See People v. Cardona, supra, 142 Cal.App.3d at p. 483; see also People v. Fleetwood 171 Cal.App. 3d at p. 987.)

An apartment that is being used exclusively for growing marijuana and storage purposes is not an inhabited dwelling as a matter of law because the law recognizes an inhabited dwelling only as a place where the tenant views the property as his actual "place of abode."  Granted, a robbery that occurs in an apartment will likely always be of the first degree.  However, like any other dwelling, an apartment must be an "inhabited dwelling" in order for the first-degree robbery statute to apply; mere occupancy is not enough.  (§213.)  Here, it was undisputed that Voelker was using the apartment in order to grow large amounts of marijuana.  It is also undisputed that the victim went to the apartment for the sole purpose of obtaining marijuana.  The fact that the robbery occurred in a secret horticultural farm and petitioner was allegedly a member of that robbery does not support an inference that anyone actually slept there at nights.  In fact, the evidence demonstrates that when the police arrived at 3:00 a.m. there were no beds in the apartment and it appeared as though the premises were being used exclusively to grow marijuana and to conduct dubious business transactions.

When reviewing the entire record, including the facts, instructions, arguments of counsel, and the entire verdict in an attempt of establishing whether or not the habitation element of section 211/213 (a)(1)(A) had been proven, one will find that that there was no definitive evidence on this element submitted to petitioner's jury.  Moreover, the additional facts presented by way of this *habeas* petition——i.e., Voelker's affidavit (attached hereto and incorporated by reference) and the Reporter's Transcript from Voelker's trial——further demonstrates that the "habitation" element was not and could not have been proven beyond a reasonable doubt.  Thus, the first-degree conviction is facially inconsistent with the statutory language that requires a finding that the robbery be committed within an "inhabited dwelling."

**(D)**    **Conclusion.**

According to the law, petitioner's conviction for first-degree residential robbery is unconstitutional. It and its punishment must be modified to second-degree robbery in order to comply with Harvey's federal constitutional rights. [3]

**GROUND THREE:**    **APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO PROPERLY EXHAUST A CONSTITUTIONAL CHALLENGE TO CALJIC NO. 17.20 REGARDING PERSONAL INFLICTION OF GREAT BODILY INJURY AS A RESULT OF A GROUP BEATING; THUS, DENYING PETITIONER OF HIS RIGHT TO LATER RAISE THOSE CLAIMS IN FEDERAL COURT.**

It is well established that a state prisoner who wishes to file a federal petition must first "exhaust" all state judicial remedies before filing a habeas petition in federal court. To meet the exhaustion requirement, the petitioner must be able to show that the highest state court has had the opportunity to rule on the issues in the case or that that there were no state remedies available. (McQuown v. McCartney (9th Cir. 1986) 795 F.2d 807, 809.) Unless a petitioner has exhausted state remedies on *all* claims presented in a federal petition, the federal district court may dismiss the entire petition. (28 U.S.C. § 2254(b) and (d); Mcneely v. Arave (9th Cir. 1988) 842 F.2d 230; Rose v. Lundy (1982) 455 U.S. 509 [102 S.Ct. 1198; 71 L.Ed.2d 379].) The exhaustion doctrine thus gives state courts the opportunity to correct any constitutional errors in the state's criminal proceedings and respects the right of state courts to resolve issues on independent state grounds. Under the Antiterrorism and Effective Death Penalty Act of 1996

---

[3]    *Habeas corpus* is the proper forum for presenting the instant claim. While it is true that this claim could have perhaps been brought forth on direct appeal pursuant to the insufficiency of the evidence standard set forth in Jackson v. Virginia, it is more appropriately raised here with the additional affidavits and Reporter's Transcript. Indeed, "[a] petition for habeas corpus is proper where the claims will require consideration of matters outside of the appellate record." (In re Paul W. (2007) 151 Cal.App.4th 37, 68; see also People v. Lucero (2000) 23 Cal.4th 692, 728-729.) And, in any event, this issue is cognizable pursuant to In re Foss, supra, 10 Cal.3d 910.

("AEDPA"), the state cannot waive the exhaustion requirement by consenting to a hearing on a case without exhaustion. Moreover, if a prisoner has not exhausted state remedies, a federal court may find that the claim is too frivolous to warrant exhaustion and deny the petition on the merits. (28 U.S.C. § 2254(b)(2) and (3).)

In the instant case, Petitioner Harvey's appellate counsel raised several fundamental challenges to the constitutionality of CALJIC No. 17.20 by direct appeal filed in the First District Court of Appeal. That challenge was overruled and the conviction was affirmed. (People v. Harvey, supra.) Harvey's attorney then filed a petition for review in the California Supreme Court. That petition, however, did not describe the federal claims that petitioner wished to raise——that is, it entirely omitted the fundamental challenges to CALJIC No. 17.20. Consequently, counsel prejudicially failed to exhaust petitioner's fundamental claims.

When a federal constitutional issue has not been presented to the California Supreme Court in a petition for review——either because the issue was omitted in the petition for review or the issue was not raised in the appellate court at all——then a petitioner must exhaust his claims by way of *habeas corpus* in the state courts before filing in the federal courts. (See, e.g., In re Catalano (1981) 29 Cal.3d 1; In re Michael E. (1975) 15 Cal.3d 183, 193, fn. 15.) With these principles in mind, petitioner next presents his fundamental challenges to CALJIC No. 17.20 in order to exhaust his state remedies.

\\\

\\

\

**(A).    It Was Reversible Error To Instruct Petitioner's Jury Pursuant To CALJIC No. 17.20 Because It Allowed The Jury To Find Petitioner Guilty Without Meeting The Statutorily Required Elements Of Penal Code § 12022.7 In Violation Of Petitioner's Rights To Due Process Of Law Under The Federal Constitution.**

**(1).    Introduction.**

In California it has long been established that the enhancement for infliction of great bodily injury, within the meaning of Penal Code section 12022.7, applies only to those who have been found to have **personally** and directly caused the victim to suffer great bodily injury. "[A] defendant cannot receive an enhanced sentence under section 12022.7 on a theory of vicarious liability."  (People v. Rodriguez, (1999) 69 Cal. App. 4th 341, 348.)  "To 'personally inflict' injury, the actor must do more than take some direct action which proximately causes injury. The defendant must directly, personally, himself inflict the injury." (Rodriguez, supra, at p. 349; italics added.)  Therefore, one who "aids, abets, or directs another to inflict the physical injury is not subject to the enhanced penalty of section 12022.7." (People v. Cole, (1982) 31 Cal.3d at 571.)

In the instant case, the trial court instructed the jury that they were to be guided by aiding and abetting instructions and CALJIC No. 17.20 in determining whether petitioner had personally inflicted great bodily injury pursuant to Penal Code §12022.7

However, CALJIC No. 17.20 is unconstitutional because it lowers the prosecution's burden of proof by omitting a material element of the enhancement. Moreover, an aider and abettor "is not subject to the enhanced penalty of section 12022.7." (Cole, supra.)  As petitioner will show, the result of this misinstruction violated his rights to due process, a fair trial, a jury trial, and fundamental fairness under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution.

### (2). CALJIC No. 17.20 is Unconstitutional

Penal Code section 12022.7, subdivision (a) states in pertinent part, that:

> Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years. (Italics added.)

Regarding the great bodily injury enhancement, the jury was instructed, pursuant to CALJIC 17.20, that:

> When a person participates in a group beating and *it is not possible to determine which assailant inflicted a particular injury*, he may be found to have personally inflicted great bodily injury upon the victim, if 1) the [defendant's?] application of force upon the victim was of such nature that, by itself, it *could have caused* the great bodily injury suffered by the victim; or 2) that at the time the defendant personally applied unlawful physical force to the victim, the defendant knew that other persons, as a part of the same incident, had applied, were applying, or would apply unlawful physical force upon the victim and the defendant then knew or reasonably should have known that the cumulative effect of all the unlawful physical force would result in great bodily injury to the victim. (Italics added for emphasis)

It is well settled that trial courts are required to accurately and completely instruct jurors as to the elements of charged offenses. (Cabana v. Bullock (1986) 474 U.S. 376, 385 ["A defendant charged with a serious crime has the right to have a jury determine his guilt or innocence, ... and a jury's verdict cannot stand if the instructions provided to the jury do not require it to find each element of the crime..."])

Under section 12022.7, the only proper basis for a jury to have found petitioner guilty of infliction of great bodily injury is that he must have: (1) personally delivered the injurious blow; and (2) was not an aider and abettor. Neither basis stated in CALJIC No. 17.20 comply with

these requirements. The first basis encourages the jury to speculate as to whether the defendant performed the act causing the victim's injuries. This is directly in conflict with the plain and unambiguous language of the statute. Thus, the jury was instructed that even if they could not find that petitioner **personally** inflicted the great bodily injury they would still be required to find the allegation to be true as long as they felt that petitioner **"could have caused"** the great bodily injury suffered by the victim. (CALJIC No. 17.20; italics added.) Petitioner's trial established that Jason Voelker and the other black male (not petitioner) were the ones who inflicted the great bodily injury——they choked DiPrima, hit him repeatedly with the belt, stomped on his head, and hit him with a Duraflame log.

DiPrima's testimony did not show that petitioner had personally inflicted great bodily injury, nor did the prosecutor argue that petitioner personally inflicted **any** of the injuries that formed the basis of the great bodily injury allegation. Thus, the only possible basis for the jury's finding that the great bodily injury enhancement was true came by application of the improper instruction which told the jury if "when a defendant participates in a group beating and *when its not possible to determine* which assailant inflicted which injuries, the defendant may be punished with a great bodily injury enhancement if his conduct was of nature that it *could have caused* the great bodily injury suffered." (CALJIC No. 17.20; italics added.)

> **(3).     The erroneous giving of CALJIC No. 17.20 allowed petitioner's jury to find liability in the absence of proof that he personally inflicted the great bodily injury.**

Despite Penal Code Section 12022.7's unambiguous language that liability for personal infliction of great bodily injury may only be based on direct, personal action by a defendant, CALJIC No. 17.20 allowed petitioner's jury to find the great bodily injury enhancement true even if it did not find that he, himself, had personally inflicted the great bodily injury. This

misinstruction allowed the jury to find personal infliction of great bodily injury if it felt that petitioner had participated in a group beating, it was not possible to determine which assailant inflicted a particular injury, and he "could have caused the great bodily injury suffered." **In other words,** it allowed a finding of personal infliction of great bodily injury in the absence of a finding that petitioner personally inflicted the great bodily injury, so long as the jury felt that petitioner was involved——in any way□□i n  the group beating, and "**could have**" applied force resulting in great bodily injury.

The Use Note to CALJIC No. 17.20 states that the instruction is derived from <u>People v. Corona</u> (1989) 213 Cal.App.3d 589. <u>Corona</u> carved out a narrow "group beating" exception to the statutory requirement that personal infliction of great bodily injury be inflicted personally. It held that "when a defendant participates in a group beating and **when it is not possible to determine which assailant inflicted which injuries,** the defendant may be punished with a great bodily injury enhancement if his conduct was of nature that it **could have caused** the great bodily injury suffered." (<u>Ibid.</u>; emphasis added.)

Here, petitioner's trial established that the "mulatto guy" and Jason Voelker (not petitioner) were the ones who inflicted the great bodily injury; thus, CALJIC No. 17.20 should not have been given. As given here, CALJIC No. 17.20 clashed with the statutory language of section 12022.7, as the clear and unambiguous statutory language limits the category of persons subject to the enhancement to those who directly perform the act that causes the physical injury to the victim. In other words, the giving of CALJIC No. 17.20 in this case was erroneous because 1.) The analytic touchstone for the Corona exception is impossibility of determining who inflicted the great bodily injury (an issue that was not implicated in the instant case); and 2.) the instruction permitted the jury to draw an inference on the basis of inconclusive evidence:

that petitioner "**could have caused**" the great bodily injury suffered. In American jurisprudence, however, convictions must be proved by evidence, not speculation. U.S. v. Dunlap (8th Cir. 1994) 28 F.3d 823; U.S. v. Rahseparian (10th Cir. 2000) 231 F.3d 1257.

> **(4). The instruction's omission of a material element of the enhancement lowered the prosecution's burden of proof and deprived petitioner of his federal rights to due process of law.**

The United States Constitution requires that the trial court give instructions regarding——and the jury determine——all material elements of an enhancement that increases a defendant's punishment beyond the statutory maximum. (Apprendi v. New Jersey (2000) 530 U.S. 466.) That standard is applicable here because the great bodily injury enhancement transformed petitioner's convictions into serious felonies under the Three Strikes statute (§ 1192.7 subd. (c)(8)) so it constituted a sentencing enhancement of 25 years to life in prison for **any** future felony. It can not be argued that petitioner's federal rights will not be at issue until a future felony may be charged, for it is the jury's finding of great bodily injury here that mandates enhancement of any future felony sentence. The status of a felony as "serious" is determined upon the date of conviction. (§§ 667, subd. (d)(1), 1170.12, subd. (b)(1).)

This is the moment□ □the only moment——petitioner can litigate the great bodily injury finding, for once established in this case, it will be binding forever. Accordingly, the instruction's omission of the material element that petitioner himself personally inflicted the great bodily injury violated his Constitutional right to proof beyond a reasonable doubt.

While it could be argued that it is difficult to prove who inflicted what injury in a "group attack," difficulty of proof does not justify lessening the prosecution's burden. Even though "[c]ourts must be sensitive to the difficulties attendant upon the prosecution of [certain kinds of cases] ... 'this court cannot alter evidentiary rules because litigants might prefer different rules in

a particular class of cases.'" (Tome v. U.S. (1995) 513 U.S. 150, 165-67, quoting U.S. v. Salerno (1992) 505 U.S. 317, 332.)

### (5).    The Erroneous giving of CALJIC No. 17.20 Expanded liability and, thus, violated the Rule of Lenity.

Ambiguities in penal statutes must be resolved in favor of the defendant.  The rule, called the rule of lenity, controls in both the U.S. Supreme Court and this Court.  (See, e.g., Bifulco v. United States (1980) 447 U.S. 381, 387.)  Under the separation of powers doctrine, the rule serves to protect the legislature's exclusive authority to define crimes from judicial encroachment.  As a matter of fundamental due process, the rule helps to ensure that citizens are given fair warning of conduct punishable as crime.

CALJIC No. 17.20 expands liability for personal infliction of great bodily injury beyond the offense defined by the clear and unambiguous language of the statute, and, thus, violates the rule of lenity.  Failure to honor that rule violated petitioner's Fourteenth Amendment right to due process of law.  (Hicks v. Oklahoma (1980) 447 U.S. 343, 346-347 [state's arbitrary denial of its own domestic rules may implicate due process].)

### (6).    The error was prejudicial because it is not possible to determine whether the jury relied on the erroneous legal theory.

When a jury is instructed on alternate theories, one of which is legally improper, reversal is required unless the record reflects that the jury's finding was not based on the legally invalid theory. Under this rule, the conviction (or finding in this case) must be reversed unless the prosecution can establish that no juror relied upon the improper theory.  (Burks v. United States, 47 U.S. 1 (1978).)  No such finding is possible here because the prosecutor relied heavily on the erroneous instruction during her closing argument – she argued the actions of "the mulatto guy" and Jason Voelker (not Harvey).  The only physical force Harvey was alleged to have inflicted

upon DiPrima was the initial punch to DiPrima's face which "jolted" his head but did not knock him down. DiPrima did not ascribe any of the kicking and hitting while he was on the ground or any of the hitting with the belt and fire log to Harvey. Ultimately the prosecutor did not argue that Harvey had inflicted any of the great bodily injuries.

There is nothing in the record before this court which indicates that the jury's true finding was not based on the misapplied instruction. As it can not be demonstrated that the jury surely did not rely on the erroneous instruction, the enhancement must be reversed. See Keating v. Hood 191 F.3d 1053, 1062, ["We have consistently interpreted Supreme Court precedent to require reversal in any case in which a verdict may have rested on a legally invalid ground."]

(7).    **The erroneous aiding and abetting theory<br>complicated the erroneous giving of CALJIC No. 17.20.**

As noted in the previous sections, Penal Code section 12022.7, subdivision (a) states that "[a]ny person who personally inflicts great bodily injury..." is subject to punishment. In the case of People v. Cole, supra, (1982) 31 Cal.3d 568, 571-572, the California Supreme Court held that this enhancement applies only to those persons who themselves actually and personally inflict the injury, and that one who merely aids, abets, or directs another to inflict the physical injury is not subject to the enhanced penalty of section 12022.7. (Ibid.)

In the instant case, petitioner's jury was instructed with aiding and abetting instructions. (CT pp. 342, 343, 344; CALJIC numbers 3.00 and 3.03) Because CALJIC Numbers 3.00 and 3.03 apply when a defendant is an aider and abettor, they should not have been given in combination with CALJIC No. 17.20. As given here, these aiding and abetting instructions simply provided an additional basis upon which the jury could find petitioner guilty of personal

infliction of great bodily injury without finding that petitioner had personally inflicted such injury.

An aider and abettor can not be punished with the enhanced punishment of 12022.7. As it cannot be demonstrated that the jury surely did not rely on the aiding and abetting instructions, the enhancement must be reversed.

> **(8).    As the error went to an enhancement that increases the penalty for a crime beyond the statutory maximum, it must be judged under the standard of Brecht v. Abrahamson.**

As discussed above, a trial court's failure to instruct the jury on an element of a sentence enhancement provision that increases the penalty for an underlying crime beyond the statutory maximum is federal constitutional error. (In re Winship (1970) 97 U.S. 358.)  The Brecht standard is just as applicable to a "misinstruction" on an element as it is to a failure to instruct on an element and the prosecution bears the burden of demonstrating that the error was "harmless beyond a reasonable doubt." (O'Neal v. McAninch, (1995) 513 U.S. 432.)

Here, the challenged instruction went to the heart of the jury's true finding of great bodily injury: as previously shown, DiPrima was merely guessing that petitioner had hit or kicked him. DiPrima later testified that, in reality, he did not know whether petitioner had ever struck him. (RT 492-494, 583.) He told Detective Pata that petitioner "'... didn't hit'" him. (RT 746.) Although it was alleged that petitioner choked DiPrima, there is no medical evidence that he suffered an injury as a result. Indeed, there is no medical evidence that he was choked at all. (Please see the testimony of the Medical Doctor. (RT 367-368.).)  Furthermore, there was no evidence whatsoever to show that petitioner had personally inflicted great bodily injury.

**(9).    Because People v. Corona misstates and misinterprets the statute and legislative intent, it deprived petitioner of his right to due process of law and to proof beyond a reasonable doubt under the Federal Constitution.**

Corona purported to create a "group beating exception" to the statutory requirement that personal infliction of great bodily injury be inflicted personally.  The court held that "when a defendant participates in a group beating and when its not possible to determine which assailant inflicted which injuries, the defendant may be punished with a great bodily injury enhancement if his conduct was of nature that it could have caused the great bodily injury suffered." (Ibid.; italics added)

The Corona holding and, thus, CALJIC No. 17.20, is not the law, but a "narrowly carved exception" to the law.   It removes the element of personal infliction of great bodily injury from the offense in certain circumstances.  As Corona's expansion of liability to persons who have not been proved to have personally and directly inflicted great bodily injury stands in clear contradiction to the language of the statute it constitutes impermissible judicial legislation and invasion of the Legislatures designated sphere, in violation of the doctrine of separation of powers that is enshrined in the Constitution and fundamental to the preservation of our civil liberties.  (U.S. v. Bass (1971) 404 U.S. 336, 348 [violation of doctrine of separation of powers violates Fourteenth Amendment].)

**(10).    Corona impermissibly lowers the prosecutions burden of proof by allowing liability for personal infliction of great bodily injury on the speculative basis of what "could have" caused the injury.**

In addition to allowing the jury to find personal infliction of great bodily injury without finding that petitioner had personally and directly inflicted such injury, Corona, and hence, the challenged instruction, further lowers the prosecution's burden of proof by allowing liability if "the application of unlawful physical force upon the victim was of such a nature that, by itself, it

**could have caused** the great bodily injury." (CALJIC No. 1720; emphasis added.)   This formulation blinds the prudence of distinguished centuries of Anglo-American jurisprudence. What **"could have** caused injury" is a fancy that belongs in the airy realms of the subjunctive, it sails on wisps of abstract reasoning and speculation; it slides on possibility and chance. Criminal liability and punishment, in contrast, must be embedded in indisputable fact, securely fastened in the absolute "beyond a reasonable doubt."

The <u>Corona</u> holding hinders the Legislature's intent.   Its imposition of liability on a person who may have participated in a group beating without, himself, directly inflicting great bodily injury removes all reason for individual restraint, for under <u>Corona</u>, once someone is involved in a group beating situation, he is fully liable for great bodily injury regardless of his own level of involvement in the creation of the injury.

Difficulty of proof, however, does not excuse the judicial removal of a material element of the statute, an excision that violates a defendant's due process right to jury determination of every material element of the offense.  (<u>Tome v. U.S.</u>, <u>supra</u>, 513 U.S. at p. 165-67.)

Group assaults (<u>Corona</u>) present problems of proof of individual liability, and problems of punishment where that proof is lacking.  Resolving those problems necessarily involves a choice: shall the law allow persons who may have been guilty, but could not be proved to be so, evade liability, or shall it inflict enhanced punishment and liability for a serious felony on persons who "could have" personally inflict great bodily injury?[4]

---

[4] While paraphrasing Sir William Blackstone, Thomas Jefferson was once conveyed the opinion that it would be far better to allow ten guilty persons to go free then it would be to strip the liberty away from one innocent. Is such sentiment simply pretentious rhetoric, or rather a cardinal principle of Anglo-American jurisprudence?

The California Legislature, however, has assisted us with the answer to the aforementioned question. Its amendment of section 12022.7 to add the word "personally" shows an unambiguous decision to define the enhancement to ensure that only those who have been proven to personally inflict great bodily injury are subjected to an immediate three year enhancement to their sentences and the consequences of having a serious, "strike" felony on their record for life.

**(11).    As the error affected the reasonable doubt standard, it is reversible per se.**

The U.S. Supreme Court has made clear that a constitutionally deficient reasonable doubt instruction is a structural defect in the trial mechanism that requires reversal regardless of the strength of the evidence of the defendant's guilt. (Sullivan v. Louisiana (1993) 508 U.S. 275, 277-278.)

> "Since a constitutionally defective reasonable doubt instruction renders it impossible for the jury to return a verdict of guilty beyond a reasonable doubt, there is no object, so to speak, upon which a harmless-error scrutiny can operate. The most an appellate court can conclude is that the jury would surely have found petitioner guilty beyond a reasonable doubt – not that the jury's actual finding of guilty beyond a reasonable doubt would surely not have been different absent the constitutional error. That is not enough. [Citation.] The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty." (Sullivan, supra, at 280.)

The jury here was advised that it could find liability on the basis of what **"could have"** happened, as opposed to the constitutionally required standard of certainty beyond a reasonable doubt. As a constitutionally deficient reasonable doubt instruction cannot be harmless error, the reduction of the prosecution's burden of proof on an element of the offense was structural error,

requiring reversal per se on the finding of personal infliction of great bodily injury, for the finding of personal infliction was inextricably tainted by the erroneous instruction on group beatings.

**(12).  The second basis allows the jury to substitute a knowledge finding for a finding that petitioner personally performed the act causing the victim's injuries.**

The second basis of the instruction is also unconstitutional because it allows the jury to substitute a knowledge finding for a finding that petitioner directly performed the act causing the victim's injuries.    Section 12022.7 does not, however, permit a knowledge finding to obviate the need for a finding that the defendant himself inflicted the injury.

The second alternate basis allows the jury to substitute a knowledge finding for a finding that petitioner directly performed the act causing the victim's injuries.    This is directly in conflict with the plain and unambiguous language of the statute.  Thus, the jury was instructed that even if they found that petitioner did not directly and personally inflict the great bodily injury they would still be required to find the allegation to be true as long as they felt that petitioner **"knew"** that others had applied, were applying, or would apply physical force and that petitioner "knew **or should have known**" that the cumulative effect of all the unlawful physical force would result in great bodily injury.

As previously illustrated, petitioner's trial established that Voelker and the other mulatto guy (not petitioner) were the ones who choked DiPrima, hit him repeatedly with the belt, stomped on his head, and hit him with a Duraflame log.  Ultimately, DiPrima did not know whether petitioner had ever hit him. DiPrima's testimony did not show that petitioner had personally inflict great bodily injury, nor did the prosecutor argue that petitioner directly performed or personally inflicted **any** of the injuries that formed the basis of the great bodily

injury allegation. Thus, the basis for the jury's finding that the great bodily injury enhancement was true came by application of CALJIC 17.20 which told the jury that if petitioner "... knew that other persons, as part of the same incident, had applied, were applying, or would apply unlawful physical force upon the victim and the defendant then knew, or reasonably should have known, that the cumulative effect of all the unlawful physical force would result in great bodily injury to the victim" then petitioner had personally inflicted great bodily injury within the meaning of § 12022.7.

### (13).    The error was prejudicial under the Brecht Standard.

As the instruction at issue here lessened the prosecution's burden of proof, it falls squarely under Sullivan, supra, and should be reversed per se. However, should this Honorable Court disagree, the error was prejudicial under the federal standards for the reasons discussed above.

### (14).    Conclusion.

CALJIC No. 17.20 was prejudicial under the circumstances of the instant case.  As shown in the previous sections of this Petition, DiPrima never testified that Harvey inflicted great bodily injury.  In regards to the conviction, though, the prosecutor argued the actions of the two other youth.  Thus, the prosecutor directed the jury to base its finding of guilt on the erroneous instruction——CALJIC No. 17.20, which told the jury that "the defendant may be punished with a great bodily injury enhancement if his conduct was of nature that it **could have caused** the great bodily injury suffered." (Ibid.; emphasis added.)

Based on CALJIC No. 17.20, the prosecutor's argument, the aiding and abetting instructions and DiPrima's own testimony, the jury was not required to find that petitioner personally inflicted great bodily injury.  A reasonable juror would have readily understood that

it was not necessary to a true finding that petitioner personally inflicted the injury if the jury utilized the court's instructions.  The writ should issue

**GROUND FOUR:    IF THIS COURT DETERMINES THAT ANY OF THE ABOVE ISSUES SHOULD HAVE BEEN PRESENTED IN A PREVIOUS PROCEEDING, PETITIONER WOULD ASK THAT THIS COURT REACH THE MERITS UNDER THE GROUNDWORK OF INEFFECTIVE ASSISTANCE OF COUNSEL.**

If this petition raises a meritorious issue that should have been raised in a previous proceeding, then petitioner was denied his constitutional right to the effective assistance of counsel in those proceedings, and this Court should reach the merits of the issues under the framework of Strickland v. Washington.   (See, e.g., In re Seaton (2004) 34 Cal.4[th] 193; Smith v. Robbins (2000) 528 U.S. 259.)

**Conclusion**

For the foregoing reasons an order to show cause should issue and the petition should be granted.

Respectfully submitted,

Dated: 5-18-08

Tristan Harvey
California State Prison, Folsom
P.O. Box 950
Folsom, CA 95763

In propria persona

## VERIFICATION & DECLARATION OF HARVEY

I have read the above petition for writ of habeas corpus and do declare upon penalty of perjury that these statements are true and correct as based upon my information and belief. Executed this 16th day of May, 2007 at Folsom, California.

DECLARANT

## DECLARATION OF SERVICE BY UNITED STATES MAIL

I the undersigned do hereby declare:

I am a citizen of the United States and a resident of Sacramento County, State of California; I am over the age of 18 years; I am ▮▮▮ a party to the within action; my legal address is California State Prison, Folsom, P.O. Box 950, Represa, California 95673.

On ___5-19-08_____, I served the within:

Motion for Stay and abeyance

on the following interested persons in said action by delivering a true copy thereof enclosed in an envelope to prison staff addressed as follows:

California Attorney General
455 Golden Gate Ave
San Francisco, CA 94102

I am familiar with the prison's practice of collection and processing correspondence for legal mailing. It is normally deposited with the U.S. Postal Service within a "reasonable amount of time" in the ordinary course of business.

I declare under the penalty of perjury that the foregoing is true and correct.

Proof of Service